UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NICHOLAS WAYNE RHODES, *Plaintiff* | § § § | |
| v. | § § | No. 1:21-CV-191-DAE |
| NOVA TRANSPORT LLC et al., *Defendants* | § § § | |

**ORDER**

Before the Court is Defendants' Motion to Exclude the Expert Opinions and Testimony of Henry Higgins, Dkt. 81, along with all associated responses and replies.

## I. STANDARD

Federal Rule of Evidence 702 sets the standard the admissibility of expert testimony. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597-98 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

1

Fed. R. Evid. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the unsupported assertions of an expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997).

In addition to being qualified, an expert's methodology for developing the basis of his or her opinion must be reliable. *Daubert*, 509 U.S. at 592-93. "The expert's assurances that he [or she] has utilized generally accepted scientific methodology is insufficient." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Even if the expert is qualified and the basis of his or her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for the expert's testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. Fed. R. Evid. 104(a). The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is

relevant and reliable. *Moore*, 151 F.3d at 276. Pursuant to Rule 403, the Court may also exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

## II. ANALYSIS

This case involves a motor vehicle collision. Defendants Nova Transport, LLC and Everardo Pichardo are being sued by Plaintiff Nicholas Rhodes for injuries he sustained on December 3, 2019, when the Peterbilt truck driven by Pichardo collided with Rhodes' pickup while both were driving on IH-35. Rhodes alleges an injury to his cervical spine as a result of the accident and alleges he has required surgical intervention.

Rhodes was treated at Brushy Creek Family Hospital, where he received surgery on his neck. Plaintiff Rhodes has named Dr. Henry Higgins, an internal medicine physician, to testify about the reasonableness of medical charges from the Brushy Creek Family Hospital where he serves as CEO, and regarding the reasonableness of Rhodes' treatment for neurological and neck issues. Higgins did not treat Rhodes.

Defendants move to exclude Higgins asserting: (1) his testimony about the reasonableness of the rates charged by Brushy Creek is unreliable as it is based on chargemaster rates, rather than insurance allowances; (2) as a non-neurosurgeon, he is not qualified to give his opinion on Rhodes' neurological or neck issues as they

3

are outside his area of scientific, technical, or specialized knowledge, and therefore he is not qualified to give an opinion on these issues as well as Rhodes' potential for paralysis; (3) he was not disclosed as an expert on neurological or neck issues, including paralysis, was not a treating doctor, and did not prepare any reports.

### A. Expert Opinions Based on List Prices

Defendants first argue that Higgins' testimony should be excluded because expert opinions based solely on list prices are unreliable. Dkt. 81, at 6. Additionally, Higgins testified that Brushy Creek will not seek recovery from Rhodes for amounts beyond what his insurer would allow. *Id.* at 1-2.

Section 41.0105 of the Texas Civil Practices and Remedies Code, provides that, in addition to any other limitation under law, recovery of medical or health care expenses in a personal injury suit is limited to the amount actually paid or incurred by or on behalf of the claimant. In *Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2011), the Texas Supreme Court stated that Section 41.0105 limits a plaintiff's recovery of medical expenses to actual costs paid, not the "list price" posted on a medical provider's bills. In other words, only evidence of expenses actually paid or incurred by the claimant can be presented to a jury.

In *Guzman v. Jones*, 804 F.3d 707, 711 (5th Cir. 2015), the Fifth Circuit addressed the issue of whether an uninsured plaintiff who may have been eligible for insurance benefits but did not have insurance at the time of his injury or treatment is barred from presenting evidence of the list prices he was charged by the hospital for the services rendered to him, because he would have incurred lower

costs had he obtained insurance. The court found that "reduced prices that he may have received had he participated in health benefits or insurance programs for which he may have been eligible are irrelevant according to Texas law." *Id.* at 712. The court held that the list prices Guzman was actually billed, and was obligated to pay, were properly admitted before the jury. *Id.*; *see Sprester v. Bartholow Rental Co.*, A-14-CV-00955-LY, 2016 WL 684933, at *2–3 (W.D. Tex. Feb. 18, 2016).

The undersigned finds that any testimony by Higgins about the bills incurred and owed by Rhodes is not unreliable even if based on inflated chargemaster rates, and his testimony should not be excluded on this basis. In this case, Higgins has also testified that Brushy Creek would not bill Rhodes for amounts that would not be allowed under his insurance plan. Dkt. 81, at 2. Accordingly, to the extent the parties dispute the reasonableness of the billing, Higgins's testimony is better addressed by vigorous cross-examination and not a motion to exclude his testimony.

### B. Opinions on Rhodes' Neurological or Neck Issues

Defendants next argue that, as a doctor of internal medicine, Higgins' opinions as to Rhodes' neurological or neck issues are outside the area of his scientific, technical, or specialized knowledge, and, therefore, he is not qualified to render an opinion on these issues or Rhodes' chance of paralysis. *Id.* at 7. Defendants cite *Cleveland ex rel. Cleveland v. United States*, 457 F.3d 397 (5th Cir. 2006), in support. Rhodes responds that Higgins is qualified to offer an opinion as to whether Rhodes' treatment at Brushy Creek was medically necessary. Dkt. 98, at 11.

In *Cleveland*, the Fifth Circuit heard a medical malpractice case involving excluded testimony from an internal medicine doctor. 457 F.3d at 397. Specifically, that doctor attempted to offer testimony that the emergency room physicians failed to appropriately care for their patient before turning that patient over to the testifying doctor for further treatment. Despite the fact that the testifying doctor had overseen treatment for the patient about whom he was testifying, the district court ruled, and the Fifth Circuit affirmed, that the internal medicine specialist could not offer testimony outside of his specialty about the appropriate standard of care for emergency medicine. *Id.* at 405-06.

When considering the question of whether a medical professional can testify outside of his or her specialty, the Texas Supreme Court noted that "expert qualifications should not be too narrowly drawn," but also "given the increasingly specialized and technical nature of medicine, there is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question. Such a rule would ignore the modern realities of medical specialization." *Larson v. Downing*, 197 S.W.3d 303, 305 (Tex. 2006). In that case, the Texas Supreme Court affirmed the trial court's decision to prevent a surgeon from testifying about a procedure within his own specialization, because he had not performed the specific procedure in question for the past fifteen years. *Id.*

Nevertheless, Texas law provides that "a doctor from one specialty may be qualified to testify as to another practice area if he has practical knowledge of what

6

is commonly done by doctors of a different specialty by virtue of knowledge, skill, experience, training, or education." *Simpson v. Barton*, 527 S.W.3d 281, 286 (Tex. App.—El Paso 2016, no pet.) (cleaned up).

Higgins is being offered to testify as to the medical necessity of Rhodes' treatment at Brushy Creek, including the opinion that "I believe [the treatments] were medically necessary to make sure this patient didn't succumb and become a quadriplegic." Dkt. 98, at 11 (citing Dkt. 98-4, Higgins Deposition 25:7-13). Higgins is not being offered as to the issue of causation.

Rhodes acknowledges that he was treated by neurosurgeon Dr. Sahni, who testified that the neck surgery he performed at Brushy Creek on June 10, 2021, was medically necessary and well as follow up treatment provided on June 15, 2021, to address a complication. Dkt. 98-1, Sahni Deposition 58-60. Rhodes states, "Dr. Sahni's testimony alone satisfies the medical necessity element for the June 15, 2021, date of service at Bushy Creek …. Dr. Higgins's adds to Dr. Sahni's testimony by providing an in-depth detailed explanation of the treatment Bushy Creek provided to Plaintiff ...." Dkt. 98 at 6-7.

Rhodes asserts that Higgins trained as a neurosurgery resident for three years, worked as an emergency room physician, and is board-certified in emergency medicine. *Id.* at 10. Defendants argue that Higgins' neurology training is twenty years out of date, and that he only works one or two shifts a month as an internist, and functions largely as an administrator. Dkt. 81-3.

7

Evaluating the facts of this case, the undersigned finds that Higgins' testimony on Rhodes's neurological issues, neck issues, and likelihood or paralysis should be excluded. Higgins has not supported the contention that he possesses practical knowledge of what is commonly done by neurosurgeons in similar situations by anything other than his twenty-year-old aborted neurology residency. Higgins provides no testimony as to his experience with similar patients, updated knowledge in neurology, special skills in the area, or updated neurology training. *See Simpson*, 527 S.W.3d at 286. Moreover, Higgins admitted in his deposition that the emergency physician who admitted Rhodes "immediately called Dr. Sahni to get the expert opinion" before admitting him. Dkt. 98-1, at 14. Through that testimony, Higgins acknowledged that treatment of Rhodes' neck and neurological issues required a higher degree of specialized knowledge than the admitting emergency room physician possessed. Additionally, in his testimony, Higgins mostly restates the analysis of the admitting physician, based on that physician's treatment notes. *Id.*

The undersigned finds that Higgins lacks adequate specialized training and experience regarding the treatment of neurological and neck issues to offer an opinion as to the necessity of Rhodes' treatment. He lacks the requisite knowledge to testify outside of his specialty on those subjects, especially on the subject of the likelihood of future paralysis. Accordingly, his testimony on these issues should be excluded. *See Jezek v. R.E. Garrison Trucking, Inc.*, No. 4:21-CV-01102-O, 2022 WL 18717712, at *3 (N.D. Tex. Nov. 1, 2022).

It is THEREFORE ORDERED that Defendants' Motion to Exclude the Expert Opinions of Dr. Henry Higgins, Dkt. 81 is DENIED IN PART and GRANTED IN PART as described above.

SIGNED June 28, 2023.

                                        DUSTIN M. HOWELL
                                      UNITED STATES MAGISTRATE JUDGE